**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Kevin A. Ashby,                                              Civil No. 08-327 (MJD/AJB)

                Plaintiff,

v.                                                           **Report and Recommendation on**
                                                             **Cross Motions**
                                                             **for Summary Judgment**

Michael J. Astrue, Commissioner of
Social Security,

                Defendant.

---

Plaintiff proceeding *Pro Se*.

Frank J. McGill, Jr., Acting United States Attorney and Lonnie F. Bryan, Assistant United States Attorney, for Defendant, the Commissioner of Social Security.

---

**Introduction**

      Kevin A. Ashby ("Plaintiff") disputes the unfavorable decision of the Commissioner of the Social Security Agency ("Commissioner") which denied Plaintiff's request for waiver of recovery of overpayment of Social Security Income ("SSI"). See 42 U.S.C. § 1383(b). This matter is before the Court, United States Magistrate Judge Arthur J. Boylan, for a report and recommendation to the District Court on the parties' cross motions for summary judgment. See 28 U.S.C. § 636(b)(1) and Local Rule 72.1. This Court has jurisdiction under the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3). Based on the reasoning set forth below, this Court **recommends** that the Commissioner's Motion for Summary Judgment [Docket No. 35] be **granted** and that Plaintiff's Motion for Summary Judgment [Docket No. 21] be **denied.**

      **Procedural History**

Plaintiff applied for Disability Insurance Benefits ("DIB") and SSI on May 16, 2001, alleging an inability to perform any substantial gainful activity since December 23, 1999, due to chronic neck and back pain, arthritic joint pain, depression, and post-traumatic stress disorder (Tr. 24).  On November 21, 2001, Administrative Law Judge ("ALJ") Neil Ross granted Plaintiff's application for SSI benefits and denied DIB benefits (Tr. 30).  Plaintiff requested review of the DIB determination and was subsequently granted said benefits with a disability onset of January 23, 2001 (Tr. 79).

Plaintiff sent a letter to SSA on December 2, 2003, informing them that he was conducting or transacting business under the name Elite Innovations,[1] which he described as a "non-profit human service organization" (Tr. 33-38).  Plaintiff committed $600.00 per month to the non-profit since its inception in March 2001 (Tr. 35, 42-43).  He claimed this money came from his Social Security payments and was "earned back by the work [he did] for the organization" (Tr. 35).  Later reports note that Plaintiff was working on this venture two hours per week/eight hours per month (Tr. 39-40, 42), and that he was allowed to do light duties on his own, at his own pace (Tr. 42).

On January 22, 2004, Plaintiff filed income tax returns for 2002 and 2003 (Tr. 104-111). Plaintiff reported self-employment business income of $7,200.00 in his 2002 income tax return (Tr. 104).  He earned an Earned Income Credit ("EIC") of $2,270.00 and, as a result, received an income tax refund of $1,253.00 (Tr. 105).  With respect to his 2003 return, Plaintiff again reported self-employment business income of $7,200.00, which entitled him to a $1,253.00 tax

---

[1] "Elite Innovations is dedicated to the service and advocacy of the economically, physically, and mentally disadvantaged through a holistic approach to improving one[']s socio-economic position and thus quality of life" (Tr. 38).

refund (Tr. 109).

On May 14, 2004, Plaintiff was notified by the Social Security Administration ("SSA") that as of that month he was no longer eligible to receive SSI payments because of his self-employment income (Tr. 62-66).[2] He was also notified of reductions in SSI payments previously received from March 1, 2002, through April 30, 2004, due to his self-employment income (Tr. 62-63). "Worksheet Remarks" dated May 21, 2004, stated that Plaintiff was advised several times that he could not file a self-employment tax return and receive SSA credit for his earnings and not have his earnings affect SSI (Tr. 71). Plaintiff requested waiver of the overpayment (Tr. 67-72).[3] On October 28, 2004, the SSA reconsidered the overpayment issue and determined that the initial overpayment decision was correct and that the collection of the overpayment of $7,188.87 could not be waived (Tr. 76-78).

On January 4, 2006, Plaintiff went to an SSA field office to discuss continuation of his SSI benefits (Tr. 80). Shortly thereafter, Plaintiff was upset that his SSI payment of $249.00 per month had ceased (Tr. 80). A claims representative explained to Plaintiff that the amount of his DIB[4] and self-employment income was too high for him to receive SSI (Tr. 80). The representative also noticed that Plaintiff was not given proper notice that his SSI payments would change and that they needed to pay him for December 2005 and January 2006 (Tr. 80). The representative informed Plaintiff that he would only pay him the $17.00 per month he was

---

[2] Defendant notes that Plaintiff's self-employment income did not result in an overpayment of his DIB, but rather an increase in DIB (Tr. 71, 79, 95).

[3] The record shows that Plaintiff filed two separate requests for reconsideration of the May 14, 2004, SSI determination (Tr. 67-71) and both were accepted by SSA (Tr. 72).

[4] The report issued by the claims representative referred to DIB as Social Security benefits (Tr. 80).

due in Minnesota (Tr. 80).[5]  Plaintiff thereafter admitted to keeping this money even though he knew it was not due to him (Tr. 81).

That same day, SSA notified Plaintiff that his SSI benefits would cease beginning February 2006 due to a failure to submit tax returns for 2004 and 2005 (Tr. 82-85).  However, contrary to statements of the aforementioned claims representative, SSA stated that Plaintiff should have received a check on January 6, 2004, for $244.54 and another check on February 1, 2006, for $17.00 (Tr. 82).  The discrepancy was noted by SSA: "New record was set up by office C39 in Brooklyn Center...and he was only paid the $17.00 he was due for 01/06, he also receives T2 benefits [i.e., DIB] of $606.00, and SSI payments have been withheld to recover overpayment in 02/06 and will stop in 03/06 due to failure to cooperate [in submitting tax returns]" (Tr. 95).  Plaintiff went to the field office in February 2006 to discuss this notice (Tr. 95-95A).  The claims representative noted that Plaintiff was aggressive, volatile, and verbally abusive during their meeting (Tr. 95-95A).  Plaintiff was escorted out of the office by a security guard, and it was recommended that a security guard be present for future interviews with him (Tr. 95-95A).

Plaintiff requested a hearing on the SSI overpayment issue before an ALJ in January/February 2006 (Tr. 86-90).  SSA acknowledged Plaintiff's request for hearing before an ALJ in late February 2006 (Tr. 96).  The letter advised Plaintiff of his right to be represented by a lawyer, as well as explained to him the general hearing procedures (Tr. 96-100).

---

[5] According to the "Report of Contact," Plaintiff had for some time been receiving $249.00 per month in SSI when he only should have been receiving at most $17.00 per month (Tr. 80).  The representative told Plaintiff that SSA had made a mistake in paying Plaintiff the $249.00 per month in Minnesota (Tr. 81).  When Plaintiff was living in New York he was given $249.00 per month for the State Supplement (Tr. 82).  Said supplement was not available in Minnesota (Tr. 82).

On March 19, 2006, SSA notified Plaintiff of another change in benefits (Tr. 101). In an earlier letter dated April 17, 2004,[6] SSA told Plaintiff that they were withholding DIB for July 2001 through September 2003 (Tr. 101). In the March 2006 letter, SSA indicated that Plaintiff's DIB should have been reduced because he was also receiving SSI for the same period (Tr. 101). More specifically, SSA could not pay all of Plaintiff's DIB because he was not entitled to the $249.00 per month in SSI during the same period (Tr. 101). SSA explained that "[they] do this to make sure that [claimant's] total SSI and Social Security [i.e., DIB] monthly payment is not more than it would have been if the Social Security benefits had been paid on time" (Tr. 101). As a result, SSA stated that Plaintiff should have been paid $6,227.48 less in SSI money and that overpayment would then be reduced from DIB (Tr. 101).

SSA sent a Notice of Hearing to Plaintiff on July 5, 2006 (Tr. 123-26). The notice again indicated that Plaintiff had a right to have a person represent him (Tr. 124). The notice also stated that the issues that the ALJ would consider at the hearing were: (1) whether Plaintiff was overpaid benefits due to self-employment income for the years 2002 through 2004, and, if so, (2) whether adjustment or recovery of the overpayment due to that income may be waived (Tr. 124). Additionally, the notice indicated that if Plaintiff had any objections to the issues stated in the notice that Plaintiff was instructed to submit objections in writing "at the earliest possible opportunity before the hearing" (Tr. 125). No objections were submitted by Plaintiff prior to the hearing.

A hearing was held before ALJ May Kunz on August 3, 2006 (Tr. 166-90). The ALJ discussed with Plaintiff his right to have either an attorney or other representative assist him (Tr.

---

[6] The Court notes that said letter could not be located in the record.

5

168-69). Plaintiff expressly stated that he understood this right and wished to proceed without a representative (Tr. 168-69). Plaintiff testified that he did not believe that he had been overpaid because he did not receive any wages (Tr. 173). As sole owner of a non-profit, charitable, community service organization, Plaintiff used his DIB or SSI as capital to run said business (Tr. 173). Plaintiff also stated that he disagreed that there was an overpayment becaue he never received payment of his retroactive DIB that he believed he was due (Tr. 174).

On October 19, 2006, the ALJ issued an opinion finding that Plaintiff was not without fault in incurring the $7,188/87 overpayment and that collection of the overpayment could not be waived (Tr. 8-14). The ALJ found that, during the overpayment period, Plaintiff did not comply with the work activity or earnings reporting requirements, and that he accepted payments he knew or should have been expected to know were incorrect (Tr. 13). The evidence did not "reflect any mental/physical deficit or lack of facility with the English language that prevented [Plaintiff] from understanding and complying with the earnings and work activity reporting requirements" as demonstrated by Plaintiff's ability to set up a business, file the necessary forms with the state, and filed the appropriate tax returns (Tr. 13). Such an ability to follow "complicated procedures" convinced the ALJ that Plaintiff also had the ability to understand the need to report any work activity on a timely basis (Tr. 13). The Appeals Council denied Plaintiff's request for review (Tr. 3-5). As a result of the Appeals Council's decision, the ALJ's decision became the final decision of the Commissioner and that decision is now subject to this Court's review. See 20 C.F.R. § 416.1481.

**Discussion**

*Standard of Review*

The Social Security Act provides that the findings of the Commissioner as to <u>any fact</u> shall be conclusive if supported by substantial evidence. <u>See</u> 42 U.S.C. § 405(g)(emphasis added). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). "In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as the evidence that supports it." <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993). In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact. <u>Id.</u> The Court should not reverse the Commissioner's finding merely because evidence may exist to support the opposite conclusion. <u>Mitchell v. Shalala</u>, 25 F.3d 712, 714 (8th Cir. 1994); <u>see also</u> <u>Woolf</u>, 3 F.3d at 1213 (the ALJ's determination must be affirmed, even if substantial evidence would support the opposite decision). Instead, the Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." <u>Gavin v. Heckler</u>, 811 F.2d 1195, 1199 (8th Cir. 1987).

*Legal Framework*

An overpayment of SSI benefits must be recovered unless relief from repayment can be granted under the waiver provisions. <u>See</u> 42 U.S.C. § 1383(b). An overpaid individual is entitled to a waiver of recovery of the overpayment only if he/she is "without fault" in causing the overpayment, and (2) recovery of the overpayment would either defeat the purpose of Title XVI[7]

---

[7] SSA will "consider adjustment or recovery of an overpayment to defeat the purpose of the supplemental security income (SSI) program if the individual's income and resources are needed for ordinary and necessary living expenses..." 20 C.F.R. § 416.553.

or be against equity and good conscience[8] or impede efficient and effective administration of Title XVI due to the small amount involved.[9] 42 U.S.C. § 1383(b)(1)(B); 20 C.F.R. § 416.550. Furthermore, "[t]he overpaid individual...is not relieved of liability and is not without fault solely because the SSA may have been at fault in making the overpayment." 20 C.F.R. § 416.552.

"Whether an individual is without fault depends on all the pertinent circumstances surrounding the overpayment in the particular case." Id. "The [SSA"] considers the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition)." Id. The SSA "will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual may have." Id. Although the finding depends on all of the circumstances in the particular case, an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from (a) failure to furnish information which the individual knew or should have known was material; (b) an incorrect statement which the individual knew or should have known was incorrect; or (c)

---

[8] "Adjustment or recovery is considered to be *against equity and good conscience* if an individual changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that payment would be made or because of the incorrect payment itself." Id. at § 416.554 (emphasis in original).

[9] "The amount of overpayment determined to meet such criteria is measured by the current average administrative cost of handling such overpayment case through such adjustment or recovery processes.  In determining whether the criterion is met, the overpaid person's financial circumstances are not considered." Id. at § 416.555.

acceptance of a payment which the individual knew or could have expected to know was incorrect. Id. The burden is upon the claimant to establish the negative prerequisite "without fault" before the SSA considers the second tier of the waiver statute (i.e., whether recovery would defeat the purpose of Title XVI, etc.). Watson v. Sullivan, 940 F.2d 168, 171 (6th Cir. 1991). If Plaintiff was not without fault, the inquiry need not proceed. Id.

*Plaintiff's Claims Related to "Fault"*

Plaintiff advances many arguments to refute the ALJ's determination finding him not without fault in causing and accepting the $7,188.87 overpayment. Nevertheless, Defendant is correct in noting that the only issue before this Court is whether the ALJ's decision regarding Plaintiff's fault was supported by substantial evidence. The Court finds that the ALJ's decision was supported by substantial evidence in the record because Plaintiff failed to timely inform the SSA that he had self-employment income earned in 2002 and 2003 until December 2003 (Tr. 12) and should therefore be affirmed.

Plaintiff claims that he informed various SSA personnel before December 2003 about his ownership of a business and was informed that said venture would not affect his disability benefits (Tr. 173-74, 181-83). The record, however, shows no such communications with the SSA about his earnings and work activity until December 2003 when Plaintiff submitted a notarized affidavit stating that he formed a non-profit organization (Tr. 33-40) and later completed a Work Activity Report indicating that he was self-employed (Tr. 42). In fact, during the hearing in front of the ALJ, Plaintiff testified that December 2005 was the earliest time he contacted SSA about his self-employment (Tr. 184). Once the overpayment information was relayed to SSA, Plaintiff was thereafter notified in May 2004 that his already received SSI

payments were to be reduced from March 1, 2002, through April 30, 2004, and that his said payments would cease in June 2004 because of his self-employment income and DIB payments (Tr. 62-66).

Furthermore, the Court would agree with the ALJ's assessment of Plaintiff's ability to understand the reporting requirements (Tr. 13).[10] The Court finds that the record does not reflect any mental, physical, educational, or linguistic limitations that prevented Plaintiff from complying with the earnings and work activity reporting requirements.  Plaintiff suggests that the ALJ's finding was erroneous because no medical evidence was presented at the hearing. See Pl.'s Mem. 7 [Docket No. 22].  The Court, however, agrees with Defendant's contention that the ALJ was not required to elicit medical information in order to conclude that Plaintiff was able to understand the earnings and work activity requirements.  As the ALJ stated, Plaintiff "demonstrated the ability to set up a business, filed the necessary forms with the state, and file the appropriate tax returns" (Tr. 13).[11]  Considering Plaintiff's ability to follow these complicated business filing procedures, along with the fact that Plaintiff has pursued his claims in front of this Court on his own behalf without the benefit of counsel, this Court finds substantial evidence in the record to support the ALJ's decision.[12]

---

[10] Plaintiff must report to SSA "any increase or decrease in [his] income." See 20 C.F.R. § 416.708.  He must also report said increase or decrease as soon as it happens and the report will be considered late if the event is not reported within 10 days after the close of the month in which the event happens. Id. at § 416.708.

[11] To this day, there is still no record of Plaintiff's tax records from 2001, 2004, and 2005.

[12] Plaintiff also argues that the ALJ's decision is not supported because she mistakenly indicated that Plaintiff filed tax returns in 2003, when he actually filed them in January 2004 (Tr. 12). See Pl.'s Br. 9.  The Court, however, holds that this misstatement does not constitute reversible error.

Even assuming *arguendo* that Plaintiff did not know that his SSI benefits would be affected once he reported them as income, Plaintiff knew or should have known that reporting such payments as income would result in a tax refund (i.e., monetary benefit above the payments he was receiving from the SSA)(Tr. 105, 109), which should have been reported to the SSA long before December 2003.  See 20 C.F.R. §§ 416.708, 714.  In fact, Plaintiff knowingly admitted to keeping the SSI payments he knew were not due to him in January 2006 (Tr. 81).  Therefore, the ALJ properly concluded that Plaintiff was not without fault because he failed to furnish information he knew or should have known to be material and/or accepting payments he knew or should have known were incorrect.  See 20 C.F.R. § 416.550.

*Plaintiff's Other Claims*

Plaintiff advances many other claims, including: (1) the ALJ erred by not fully developing the record because she did not consider any issues relating to the calculation and payment of his retroactive DIB he believes he was entitled to (see Pl.'s Mem 6-7); (2) racial discrimination played a role in his treatment by the SSA and the ALJ because he was an African-American male (Id. at 2); (3) the ALJ erred in failing to decide Plaintiff's case within the statutory time frame  prescribed by 42 U.S.C. § 1383(c) (Id. at 4-6); (4) that he was entitled to interim benefits (Id. at 5); (5) the ALJ erred in failing to assist him because he was unrepresented and disabled (Id. at 7-8); (6) the ALJ failed to assist him at the hearing (Id.); and (7) that recovery of the overpayment of $7,188.87 is unlawful, defeats the purpose of Title XVI, and is against good conscience (Id. at 11-13).  While the Court questions its ability to adjudicate these

claims by reason of non-exhaustion,[13] for purposes of complete disposition of these motions each claim will be addressed on the merits below.[14]

### 1. *Retroactive DIB Claim*

Plaintiff argues that the ALJ erred by not fully developing the record because she did not consider any issues relating to the calculation and payment of his retroactive DIB he believed he was due. See Pl.'s Mem. 6-7.  More specifically, Plaintiff maintains that there was no overpayment and that "[t]he business tax documentation filed in 2004, was utilized as an excuse for SSA to forgo paying the nearly $6,310.56 owed to [him] in retro-active Social Security Disability windfall funds even though SSA had recognized on several occasions that there was no funds [obtained] from plaintiff's business activities." Id. at 13-14.

The Court, however, finds that the ALJ did not err in this instance.  Upon review of the record, Plaintiff has failed to provide any evidence showing that the $7,188.87 overpayment in SSI was actually a lump sum of retroactive DIB payments due to him.  There is only one notation in the entire record referencing Plaintiff's DIB claim or its adjudication, and said notation does not indicate that Plaintiff was entitled to retroactive benefits (Tr. 79).  Moreover, as stated earlier, the only issue before the Court at this time is whether the ALJ properly decided that Plaintiff not without fault for being overpaid SSI benefits due to self-employment income for 2002 through 2004.  Plaintiff was put on notice before the hearing that if he objected to the issues the ALJ intended to consider that he was must do so in writing at the earliest possible

---

[13] Plaintiff's claims that were not addressed by the ALJ at the August 3, 2006, hearing must be fully exhausted at the administrative level before this Court can review such claims. See 42 U.S.C. § 405(g).

[14] Exhaustion can be waived by the courts. Mathews v. Diaz, 426 U.S. 67, 75-76 (1976).

opportunity before the hearing (Tr. 125). Plaintiff never submitted any objections prior to the hearing on this issue, therefore, the Court would further hold that this issue is not ripe for judgment as there has been no findings of fact by the SSA regarding this claim. See 42 U.S.C. § 405(g).

### *2. Racial Discrimination Claim*

Plaintiff also believes that racial discrimination played a role in his treatment by the Agency and the ALJ. See Pl.'s Mem. 2. Plaintiff refers to reports in the record that describe him as violent, large, imposing, volatile, and verbally abusive . Id. However, Plaintiff does not refute that on at least two occasions he used obscenities with SSA employees (Tr. 80-81, 95-95A). On the second occasion, Plaintiff's conduct resulted in him being escorted out of the SSA field office by a security guard (Tr. 95-95A). As Defendant notes, Plaintiff attempts to minimize his behavior by stating that his actions did not rise to a level of criminal misconduct. See Pl.'s Mem. 2. Nevertheless, Plaintiff has failed to set forth any evidence, other than his own subjective beliefs, of any such discrimination and this claim should therefore be rejected.[15]

### *3. Reasonable Notice Claim*

Plaintiff argues that the period of time that elapsed between his request for a hearing (January/February 2006) concerning the overpayment, the date of the hearing (August 3, 2006), and the ALJ's decision (October 19, 2006), violated his statutory right to a decision following a hearing within ninety days of the hearing request per 42 U.S.C. § 1383(c)(2). Id. at 4. Federal

---

[15] Similar to Plaintiff's retroactive DIB claim above, this claim is not properly before this Court for reasons of ripeness and timeliness. Anyone who believes he or she has been discriminated against by the SSA must first file a written complaint by letter or by using a Discrimination Complaint Form (SSA-437) within 180 days of the alleged discrimination.

regulations, however, recognize that delays happen frequently and that it is not always possible to issue a decision in ninety days. 20 C.F.R. § 416.1453(c); 1 Soc. Sec. Disab. Claims Prac. & Proc. § 16:115(2d ed.)(2008)(The rule that an ALJ must issue a hearing decision in SSI cases within 90 days is "violated in most jurisdictions most of the time").  While the Court agrees that statutorily the ALJ's decision was untimely, the Court is not inclined to dismiss said decision on procedural grounds, especially considering the complexity of this action.  Moreover, Plaintiff only now objects to the ALJ's decision pursuant to 42 U.S.C. § 1383(c)(2), which in essence is also untimely considering the opportunity he had to bring this issue to the ALJ's attention in writing before the October 19, 2006, hearing.  Thus, Plaintiff's claim should be denied.

### *4. Interim Benefits Claim*

Plaintiff also argues that payment of interim benefits are due at this time due to the procedural deficiencies of the SSA in deciding the overpayment issue. See Pl.'s Mem. 5.  The Court finds, however, that Plaintiff's argument is misguided as there is no statute that sanctions the payment of interim benefits pending court review of an ALJ's decision denying a waiver of overpayment.  There are very limited circumstances which allow for the payment of interim benefits in social security cases. See 42 U.S.C. §§ 423(g), 423(h), 1383(a)(4), 1383(c)(7), 1383(a)(8).  None of those statutes apply in this case.  Therefore, as Defendant contends, "The doctrine of sovereign immunity precludes this Court from ordering an award of interim disability benefits payments in the absence of statutory authority.  Since there is no statutory provision authorizing the payment of interim benefits as Plaintiff requests, the Appropriations Clause

precludes such an award." See Def.'s Mem. 16 [Docket No. ???].[16]

### 5. *Failure to Assist Claims*

Plaintiff contends that the ALJ erred in failing to assist him because he was unrepresented and disabled. See Pl.'s Mem. 7-8. The Court, however, disagrees. Plaintiff was fully informed that he could have an attorney or other individual represent him at the hearing. The SSA letter acknowledging Plaintiff's request for hearing in February 2006 clearly explained his right to legal representation (Tr. 96-100). In fact, the letter listed numerous organizations that he could contact if he was unable to pay for legal representation (Tr. 99), as well as a list of private attorneys (Tr. 98). In July 2006, the Notice of Hearing also indicated that Plaintiff had a right to have legal representation (Tr. 123-26). Even at the hearing, the ALJ explained to Plaintiff that he had a right to have someone assist him (Tr. 168-69). Plaintiff understood this right (Tr. 168-69), but ultimately decided to proceed without representation. Considering this evidence, the Court finds that the record does not support Plaintiff's claim.

While it is true that the SSA found Plaintiff to be disabled and entitled to DIB and SSI benefits, the Court is not persuaded by Plaintiff's contention that these disabilities hindered his representation in front of the ALJ or that the ALJ was unsympathetic to his cause. As previously stated, the ALJ Ross found that Plaintiff suffered from severe impairments (Tr. 28). Notwithstanding these impairments, Plaintiff was able to set up and operate his own business, perform light work, obtain tax refunds using his social security benefits, and represent himself in

---

[16] The Appropriations Clause prohibits the disbursement of money from the Treasury "but in consequence of appropriations made by law." U.S. Const. Art. I, § 9, cl. 7. The Supreme Court interpreted this to mean that "...the payment of money from the Treasury must be authorized by a statute." Office of Personnel Management v. Richmond, 496 U.S. 414, 424 (1990).

from of the ALJ and this Court. Such evidence runs counter to any arguments made by Plaintiff that his disabilities affected his representation. Plaintiff was physically, mentally, and intellectual competent to proceed on his own behalf.

Plaintiff also claims that the ALJ failed to assist him at the hearing. See Pl.'s Mem. 7-8. More specifically, Plaintiff asserts that the ALJ failed to inform him that he was entitled to reasonable notice and opportunity for hearing, as well as the ninety day statutory time limit for SSA to render a decision. Id. Contrary to his claim, the Court finds that Plaintiff was given reasonable notice and opportunity for hearing. The SSA received Plaintiff's request for a hearing on February 14, 2006 (Tr. 86-90), and sent him a letter on February 16, 2006, informing him about the hearing process and things he should do to prepare for the hearing (Tr. 96-100). A Notice of Hearing was thereafter sent on July 5, 2006, which explained the same procedures (Tr. 123). Plaintiff testified at the hearing that he received the notice (Tr. 169). The ALJ also discussed Plaintiff's file and asked whether he had any objections to the exhibits on file (Tr. 172). The ALJ then admitted all the exhibits into the record as she found them to be relevant (Tr. 172). Plaintiff could have made objections, but he failed to review the files before the hearing (Tr. 172). In the end, Plaintiff decided to proceed on his own and the ALJ was under no further duty to inform Plaintiff of his legal rights and remedies.

### *6. Unlawful Overpayment Claim*

Finally, Plaintiff argues that the planned recovery of $624.20 of Plaintiff's $679.00 monthly benefits is unlawful pursuant to 42 U.S.C. § 1383 (i.e., more than 10% of monthly income). See Pl.'s Mem. 11-12. He also claims that withholding said amount would cause "financial hardship and be 'against equity and good conscience.'" Id. at 13. The Court, on the

16

other hand, concludes that in light of the earlier finding that there is substantial evidence in the record to support the ALJ's decision regarding Plaintiff's fault, there is no need to address Plaintiff's claim which relates to the second step of the waiver inquiry (i.e., whether the recovery would defeat the purpose of Title XVI, be against equity or good conscience, or impede the efficient and effective administration of Title XVI due to the small amount involved) if the overpaid individual is found to be without fault in causing the overpayment. See 42 U.S.C. § 1383(b); 20 C.F.R. § 416.550, Watson, 940 F.2d at 171.

### *Plaintiff's List of Exhibits*

As Defendant notes at the end of its memorandum, Plaintiff attached several exhibits (A-P)[Docket No. 23] to his brief filed with the Court. Upon review of said exhibits, the Court would agree with Defendant's contention that this evidence was not part of the record on which the ALJ's and the SSA's decisions were made, and are therefore not part of the record for purposes of substantial evidence review and may only be considered in determining whether remand is appropriate pursuant to the sixth sentence of 42 U.S.C. § 405(g). See also Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993). A "sentence-six remand" should be made only upon a showing that the additional evidence is new, material, and that there is good cause for failure to incorporate the evidence into the record during the administrative proceeding. See 42 U.S.C. § 405(g); Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993). Plaintiff carries the burden of proving the elements referenced above. Id. Here, Plaintiff failed to request a sentence-six remand or even refer to Exhibits E through P in his brief. There is also no argument made by Plaintiff as to why these exhibits are material and that there is good cause for failure to include them in the record during the hearing in front of ALJ Kunz. Considering these findings, the

17

Court concludes that Plaintiff has failed to carry his burden of proof thereby waiving the issue of sentence-six remand for purposes of this Court's review. See Yeazel v. Apfel, 148 F.3d 910, 911-12 (8th Cir. 1998).

### **Conclusion and Recommendation**

For the foregoing reasons, the Court **recommends** that the Commissioner's Motion for Summary Judgment [Docket No. 35] be **granted**; that the Plaintiff's Motion for Summary Judgment [Docket No. 21] be **denied**; and that Judgment be entered in favor of the Commissioner.

In light of the Court's report and recommendation on the parties cross-motions for summary judgment, the Court also recommends that Plaintiff's Motion for Injunctive Relief [Docket No. 16] be **denied** as moot.

Dated:  January 29, 2009

　　　　　　　　　　　　　　　　　　　　　 s/ Arthur J. Boylan
　　　　　　　　　　　　　　　　　　　　　Arthur J. Boylan
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

**Notice**

Pursuant to Local Rule 72.2 (b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **February 12, 2009.**